And we'll hear from counsel in Municipal Labor Committee et al. and Sitkin et al. against Rold. Good morning, Your Honors. May it please the Court, Jane Becker in representation of William J. Rold, the putative intervener in this case. What's going on in this section? Well, I'd like to start out by saying that the case is not moot because the district court did not have the power to divest this court of determining whether intervention should have occurred. Moreover . . . Does a non-party who makes an appeal over which this court has no jurisdiction thereby have the power to divest the district court of jurisdiction over the underlying case? Well, first of all, Judge Kears, I'd like to . . . Of course, always a putative intervener is a non-party. But in this case, the district court first tacitly denied the motion to intervene with the October 2016 order, which . . . The district court then entered a second order in December of 2016, which left the October order intact and also left intact orders permitting the class counsel to continue re-reviews of cases from the 1970s and the 1980s. The consequence of those re-reviews is that class counsel was submitting fraudulent claims for attorney's fees to be paid from New York State. And the time of the judges on the Unemployment Insurance Appeals Board was being diverted from hearing current appeals, which is their mandate from the United States Department of Labor, to hearing these cases where we don't even know whether the claimants are still alive. And even if they are still alive in the 1970s and 1980s, if they could conceivably prove that they were still . . . that they were looking for work during the Carter administration. This court has held in both drywall, tapers and pointers, and in the Ligon litigation, that the best practice for a district court is to resolve the motion to intervene that's pending before making a substantive ruling on the matters before the court. The reason for that is that there is now no way to disentangle whether the intervener's input would have benefited the court or whether, in fact, the intervener's interests could have been impaired, which is the standard that Rule 24 provides. Well, we may have said that that's the better practice, but have we said that the failure to follow what we deem to be the better practice is the equivalent of denying the motion to intervene? Well, in drywall, tapers and pointers, this court reversed and remanded for a determination on the motion to intervene, even though there had been a final judgment entered. And there was also a . . . That was clearly appealable. Exactly. Exactly. But there was . . . Exactly. But in drywall, the circuit court clearly understood that it had jurisdiction to resolve whether the district court should have decided the motion to intervene because that's what the circuit court decided. Take it back, decide it, and then if you lose, come back and complain to us about that. But here, what the district court did was rule on the efforts to end, quote-unquote, Barcia without ruling on whether the intervener had a right to be present in the room. You now have the motion to intervene denied in the district court, haven't you, recently? Exactly. And there's been a final order entered in the district court now, has there not? There's an order . . . You could take an appeal from that. You could take an appeal from that, and on appropriate appeal from that order, from that paper, you'll get a decision on whether your motion to intervene was appropriately determined. And if it was not appropriately determined and it's reversed, then you get back in, and then the question is, what's the remedy that flows from that, given the fact that you should have been allowed to intervene? It's totally consistent with drywall. Well, it's not wholly consistent. Well, in drywall, there was no decision . . . That's exactly what happened in drywall, isn't it? In drywall, there was no decision whatsoever. Here, there's been a one-word decision denied, but there has not been a decision on the merits of Rule 24, which is one of the elements of the request . . . That might be part of your appeal, that the denial was inappropriate because it didn't satisfy Rule 24. Well, Your Honor, it just strikes . . . It's like a cart before the horse. That's the problem here. Well, that could happen, but it strikes me that that would be an enormous waste of everyone's time, this Court's time. And what it allows to happen in the interim is it allows the underlying fraud that we've been complaining about in Barcia to continue for the time that it takes to bring that appeal again. Maybe a lousy policy, but final order rules is what Congress did to us. I mean, if this were in state courts, you could have gone to the appellate division and you would have gotten all kinds of rulings. Back in the days when I was an appellate division judge, I didn't realize how much power I had, but here we have a final order rule. I mean, it may be a lousy policy, but that's what we're stuck with. Well, you aren't stuck with that. You want us to write an exception to the final order rule. Excuse me? You want us to write an exception to the final order rule. No, we do not. What we're asking you to do is find that there was a tacit denial of the motion to intervene . . . You're asking us to read Judge Preska's mind. No, I'm not asking you to do that either. Because by entering orders without having allowed intervention to occur, based solely on the discussions of . . . The rule that you want is what? What's the rule that comes out of ruling your way? That when a district court rules on the substantive matter before it, that without making a decision on the motion to intervene, that there is a right to appeal from that order. The legal principle upon which we build that rule is what? Rule 24? The legal principle upon which we base that rule is that when you have a tacit denial of a motion to intervene . . . That . . . Exactly. The harm that has been caused is . . . You're writing a rule that says that when someone intervenes, the court has to decide that before it decides any other substantive issues that affect the merits of the proceeding. Well, not any other . . . Well, then how do we . . . You're the one who's asking us to rule your way, and so I'm trying to understand the rule that you want. Well, but what the judge did was she ruled that there were going to be three phases of disengagement, and she entered the first order. There's never an opportunity to challenge the elements of that first order unless there's a direct appeal from that first order. That first order will continue to, as I've said, perpetrate the fraud in the interim. Let me ask you a couple of questions based on the procedural posture of this case. You asked us originally to issue a writ of mandamus to Judge Pritzker to compel her to rule on your motion, right? Yes. That's now definitely moot, right, since she has decided? She has decided. All right. So what, in your view, are the live issues on this appeal? The live issues are whether the judge denied intervention by issuing the orders in 2016, in October and December 2016, and whether this court should reverse those orders and remand with a decision requiring a decision on the merits. And we're also asking, Your Honor, there is also the Erie County issue with respect to the public filings. I mean, we're asking that things, which is exactly the core of Erie County, status reports on settlement or disengagement should be made public. It's a public court. Are these issues, such as they are, are they currently before the court so that we have an appeal pending on them? The issue with both asking you to remand and require a decision on the merits of Rule 24 and the request that you decide that public documents be made public are both before this court. You're not asking for a remand at this point of any kind? Well, we are asking for a remand. We're asking for a remand in an order that there be a decision on the merits pursuant to Rule 24. Thank you. We'll hear from the defense. Are you pursuing the mootness question? I am, yes. Why don't you address that? Sure. So first, David Frankel on behalf of the state, and I'd be happy to get into the mootness question first. So the basic issue here is that the district court has now issued the exact ruling that Rhoades sought to compel, which is an order granting or denying the motion to intervene. We now have that order. To the extent an appeal lies in this case, Rhoades' appeal is from that final order denying intervention. None of these interlocutory orders that did not address, much less decide intervention before this. You know, this court's precedents are clear that when an appellant receives the relief he seeks, he can no longer maintain an appeal. The appeal becomes moot. And in general, this court lacks jurisdiction even beyond the mootness issue. That the orders appealed from, these October and December so-ordered stipulations, do not qualify as constructive denials that would give right to an immediate appeal as of right. No court, no court, this court in Drywall Tapers or any other court, has found a constructive denial of intervention in a live case where the district court retained the ability to rule on a motion to intervene. And as in this case, the district court actually did rule on that motion to intervene. An appeal lies from that order and not the prior orders that did not address, much less rule on it. And the reason for that is that the collateral order doctrine is itself an exception to the rule that you appeal final judgments. And it's a narrow exception. It's an exception that says when there are issues that are conclusively determined that are separate from the merits, that's an exception to the general rule that a party can't take an immediate appeal or an intervener in this case. And here, there was no conclusive determination on the merits of a collateral issue. And again, we know that in part because now there has been a conclusive determination and any appeal would lie there. And the United States Supreme Court in Stringfellow talks about the narrow construction of this doctrine. This isn't a doctrine to be applied broadly when a party seeks intervention relief or is denied permissive intervention. It's a doctrine that's applied strictly. And in any event, I'd like to address for a minute just the underlying merits of the motion to intervene. To the extent that there was a constructive denial in this case, any such denial would be entirely appropriate. Rold has no cognizable interest in this litigation. He's entitled to make whatever arguments he wants to make in the separate wrongful termination and ketam case. But nothing that happens in this case will bind him in that case or preclude him from making any arguments in that separate case. And the idea that he can carry this separate status as a relator, as a representative of taxpayers or the government, that the filing of a ketam case allows him to brandish that power and barge into another case as a representative of those public interests, finds no support in any case law and has no policy justification. In addition, the motion was vastly untimely. Rold knew about the Barcia litigation since 2007. He filed his separate action in 2011. And he could have sought to intervene at any time then or thereafter. Instead, he expressly disclaimed that he wanted to intervene, waiting five years before bringing this case. And to allow intervention now would greatly prejudice the parties, would have greatly prejudiced the parties, in winding down this consent decree to which Rold was really a third party, no more than an interloper. To the extent that Rold has asserted the idea of getting involved to reduce payments under the consent decree, that the state has adequately represented interest. The state has always been involved in this case. For many years and many judgments in 1994 and 2004 and 2007, attempting to reduce its obligations under the decree, and now essentially haven't been able to wound that down. And the district court here, I mean, Rold never filed a petition for mandamus in this case. So he filed the petition for mandamus in the separate case, seeking to compel a ruling on the motion to dismiss. But if there was an issue here about timing, the appropriate path would have been to pursue a petition for mandamus in this case, which was never pursued. But as it is, the district court did not abuse its discretion in handling the two related cases. In focusing and winding down the consent decree in one case, and focusing and supervising settlement negotiations in the other case. District court has wide discretion in terms of handling its docket and in the timing of its rulings. And the recent Floyd decision is one other case where a court has appropriately held off on ruling on a motion to intervene, until issuing a final judgment and then ruling concurrently in that case. If this court has no further questions, we would submit based on our briefs and ask the court to dismiss the appeal. Thank you. Thank you. Mr. Frankel. May it please the court. My name is David Rath. I'm the attorney for the plaintiff's intervenors. We agree with the state. One of the few times we agree with the state. That there is just no jurisdiction with this court to decide these appeals. The judge has rendered a decision denying the motion to intervene. They don't like it. They can appeal it. Additionally, as we argued in our briefs, we believe there's some other jurisdictional questions dealing with whether the notice of appeal itself was even adequate on the original orders. Those orders have absolutely nothing to do with the issues that Mr. Rold has raised. Rather, they are wind-down orders that deal strictly with ending a 34-year-old case, which, Judge Cabranes, you had ruled upon back in 2004, and you made it clear this case has got to come to an end, reading between the lines. That's exactly what we've done. If this case continues in the way that Mr. Rold wants it to continue, which includes vacature of two of the major orders that actually wind down these cases, what you're doing is unwinding the case and restarting it again, where Mr. Rold gets a seat at the table and gets access to documents that he could use in his separate case where he can fully litigate that case should he choose to do so. The practical aspects of where this all goes is that while we recognize and argue that this case should be dismissed at this level as not giving a jurisdiction to decide it, alternatively, it's time to put an end to this. If the court believes that there is some merit to the idea that there was some kind of denial of intervention by the entrance of those two orders, by all means, take a look at the underlying cases, which have been fully briefed by us and by the State at least, on whether intervention should be granted at all. To now have a situation where the court dismisses this for whatever reason, it goes back down to the district court. You get a decision from there. It comes back up to us is sort of a waste of judicial resources when the arguments on the merits of whether it should be granted intervention or not are squarely before the court. Beyond that, I have no other further matters to raise unless the court has questions for me. We've stated all we need to state in our briefs. Thank you very much. Ms. Becker? Your Honors, Counsel Raff refers to the only time that this case was before this court in the past, in its 38-year history. That was in 2004. At that time, this court directed the district court to end the case promptly. I would submit the 13 years is not ending the case promptly. I would also submit that from the very few fee petitions or fees that we can see, that we have seen, the fees for Raff and Becker from November and December of 2015 reveal that at that point, they were in full swing. They were billing $80,000 one month, $100,000 the next month. There was no compliance according to them. This is just going to have to keep going on and on and on. Then, in January 2016, all of a sudden, they got religion. Why did they get religion? Because in the related case that Roe brought, the Cuitam case, the judge enjoined their fees. That's the only reason they suddenly agree with the Attorney General because the gravy train is going to end, we hope, because the latest order does not end the case. They continue in that, pursuant to that order, to review the cases from the 70s and the 80s. If this court were to decide that this case is currently moot, what we would ask, with all due respect, is that . . . because we will file an appeal of the order denying intervention, but we would like that there be an expedited briefing schedule so that this case can be heard promptly and the district court can receive the message that it needs to receive, which is, quite frankly, Garcia has gone off the rails. Thank you very much. We'll reserve the decision. The last case on our calendar is on Submission U.S.A. v. Ogarro, Jr. We're in recess.